## LEE et al. v. LONDON ASSURANCE.

(Circuit Court, E. D. Pennsylvania. January 18, 1902.)

### No. 40.

INSURANCE—FIRE—GUARANTY FROM LOSS—DELAY IN SHIPMENT.

Defendant issued a policy of insurance on cotton to be shipped by plaintiff during the ensuing year, covering certain risks, including loss by fire, and added a supplemental agreement that, in consideration of the acceptance of the policy containing a stipulation that it did not cover any cotton in the custody or control of any land carrier or other bailee, defendant agreed that, in the event of loss on such cotton, it would guaranty the solvency of such carrier or other bailee, and the prompt collection of the loss from them, and pending such collection would advance the amount of such loss to plaintiff. While plaintiff's cotton, intended for shipment, was in cars ready to be transferred to the vessel, three fires started unaccountably in it and other cotton standing near it. The shipowners, deeming the cotton inflammable and unsafe, refused to receive it, and the railroad company stored it in a warehouse. *Held*, that the guaranty did not cover loss from delay in shipment or occasioned by the refusal of the shipowners to receive the cotton, though that was caused by its inflammable condition.

Motion to Take Off Nonsuit.

R. C. Dale, for plaintiff.

John F. Lewis and Francis C. Adler, for defendant.

J. B. McPHERSON, District Judge. On September 1, 1899, the defendant issued a policy of insurance upon cotton to be shipped by R. A. Lee & Co. during the year next ensuing, the policy covering, among other risks, loss or damage by fire. Under this policy Lee & Co. shipped 300 bales of cotton early in August, 1900, by the Pennsylvania Railroad Company, to Philadelphia, from which point they were to go by the American Steamship Line to the port of Liverpool. The cotton reached Philadelphia about the same time—perhaps by the same train—as certain other bales, which will be spoken of as the "Gilbert cotton." On August 7, while the cars containing both these shipments were standing close together in the yard of the Pennsylvania Railroad Company, adjoining the wharf of the American Line, an unexplained fire broke out in one of the cars containing the Gilbert cotton, and did some injury. On the next day a fire, which also could not be accounted for, was discovered in one of the cars containing the Lee cotton, and about 50 bales were either injured or destroyed. The Lee cotton was intended to be shipped by the steamship of the American Line that was to sail on August 11 or 12, but in consequence of these two fires the steamship company regarded the cotton as so inflammable, and so likely to endanger the vessel in which it might be shipped, that they refused to receive it. The tender to the vessel was probably made by the railroad company on August 9, but, in any event, it was made before the day fixed for the sailing of the steamship. Afterwards, the steamship company agreed to send the cotton forward by a vessel that would sail in September, but on September 2 another unexplained fire broke out in the Gilbert cotton, and the steamship com-

pany peremptorily refused to receive either lot upon any of its ships. Two weeks afterwards the Pennsylvania Railroad Company removed the remaining 250 bales of the Lee cotton from its cars, and stored them in the warehouse of D'Olier & Co., where they still remain. They have been examined in the warehouse by D'Olier & Co., and pronounced free from fire, and fit to be transported. The cotton was consigned to Buston & Co., of Liverpool, by whom it was bought and paid for, and the bills of lading have been indorsed and delivered to them. This suit is brought by R. A. Lee & Co. to the use of Buston & Co., and was begun upon the theory that the defendant, acting by one of its agents, had taken possession of the 250 unburnt bales of cotton in Philadelphia, and had instructed the Pennsylvania Railroad Company to have it stored in D'Olier's warehouse; and therefore that, as the defendant had interrupted the transportation of the cotton, and had treated it as if its apparently inflammable character had rendered it a total loss, the defendant was equitably liable under the policy. The evidence offered at the trial, however, to support this theory was clearly insufficient, and a nonsuit was accordingly entered. Upon this motion to take off the nonsuit the plaintiffs concede that the testimony was not sufficient, but ask that a new trial may be granted for the reason that the defendant is liable upon another ground, which was not put forward either in the declaration or at the trial.

That ground is as follows: The defendant's policy contains, inter alia, the following clause: "This policy does not cover any cotton in the custody or control of any land carrier or other bailee." Upon the same day on which the policy was issued a supplemental agreement was made in these words:

"Messrs. R. A. Lee & Co.: In consideration of your acceptance of our policy No. 872, containing the stipulation, 'This policy does not cover any cotton in the custody or control of any land carrier or other bailee,' we agree that, in event of loss on such cotton, we will guaranty to you the solvency of such carrier or other bailee, and the prompt collection of the loss from them; and under such guaranty we will, pending such collection, advance the amount of such loss to you, or to the holder of the certificate of insurance. We furthermore agree that we will assume and pay all costs and expenses incurred by you in connection with the collection of such claims."

The plaintiffs' position is that by virtue of this supplemental agreement the defendant is liable, because they have suffered loss by reason of the refusal of the steamship company to carry the cotton, and that this loss is to be measured by the value of the 250 bales now on storage in D'Olier's warehouse. I am unable to support this view of the supplemental agreement. It cannot, I think, be successfully contended that the loss thus referred to is due to a risk covered by the policy. The insurance is against various risks, including fire: but it does not cover such loss as may be sustained by delay in shipment, even if such delay should be due to the inflammable character or condition of the cotton. It seems clear to me that the "loss" referred to in the supplemental agreement must be a loss from such risks, and from such risks only, as are taken by the policy. It can hardly be supposed that the defendant intended practically to guaranty that the plaintiffs should recover from the carrier

or bailee in case of loss from any source whatever,—for example, from a flood or a tornado. Moreover, the supplemental agreement refers to losses upon cotton in the custody or control of any "land carrier or other bailee," and evidently contemplates that the loss shall be caused by them, for it is the solvency of "such carrier or other bailee," and the prompt collection of the loss from "them," that is guarantied; while the pending motion is based upon an alleged cause of action against an ocean carrier, who is, I think, not within the terms of the agreement at all. Even if it should be supposed that the steamship company was within the words "other bailee," the agreement would still be inapplicable, for the cotton was never within its custody or control.

The motion is refused.